UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| WENDELL DIXON, | ) |
| | ) |
| Petitioner, | )  Civil Action No. 5:19-CV-384-CHB |
| | ) |
| v. | ) |
| | )  **ORDER ADOPTING MAGISTRATE** |
| SCOTT JORDAN, WARDEN, | )  **JUDGE'S REPORT** |
| | )  **RECOMMENDATION** |
| Respondent. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Candace Smith [R. 37], which addresses *pro se* Petitioner Wendell Dixon's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [R. 1]. Respondent Scott Jordan,[1] Warden of the Kentucky State Penitentiary, responded [R. 16], and Dixon replied [R. 26]. Magistrate Judge Smith recommended that this Court deny Dixon's Petition and decline to issue a Certificate of Appealability. [R. 37, p. 26]. Dixon sought extensions of time to object to the Report and Recommendation, [R. 38]; [R. 40], which Magistrate Judge Smith granted, [R. 39]; [R. 41]. Dixon then filed his objection, contesting only one finding by Magistrate Judge Smith. [R. 42]. For the reasons set forth below, the Court will adopt Magistrate Judge Smith's Report and Recommendation, deny Dixon's Petition, and decline to issue a Certificate of Appealability.

---

[1] At the time Dixon filed this case and the Warden's response was filed, DeEdra Hart was the Warden at the Kentucky State Penitentiary. Because Scott Jordan is now the Warden at the facility, and the proper respondent to a habeas petition is the petitioner's custodian, *see* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, the case heading has been updated accordingly and the Court will reference only Warden Jordan throughout this Order.

## I. BACKGROUND

On March 4, 2015, Petitioner Wendell Dixon was sentenced by the Fayette County Circuit Court to twenty-eight years' imprisonment after a jury found him guilty of one count of first-degree assault and two counts of first-degree wanton endangerment for the August 9, 2013 shooting of April Ballentine, his former girlfriend. *See Dixon v. Commonwealth*, 2016 WL 672026, at *1 (Ky. Feb. 18, 2016) (hereinafter, *Dixon I*); *Dixon v. Commonwealth*, 2019 WL 2068538, at *1 (Ky. Ct. App. May 10, 2019) (hereinafter, *Dixon II*). The shooting left Ballentine paralyzed from the breastbone down. *Dixon I*, 2016 WL 672026, at *1. Dixon appealed as a matter of right, but the Kentucky Supreme Court rejected Dixon's arguments and affirmed his conviction and sentence. *Id.* at *4.

Next, Dixon filed a motion to vacate pursuant to RCr 11.42 in the Fayette Circuit Court. *See Dixon II*, 2019 WL 2068538, at *1. Dixon put forth numerous claims of ineffective assistance of counsel, including, as relevant here, that trial counsel was constitutionally deficient for failing to move for a mistrial after the jury observed and/or heard Dixon in physical restraints. *Id.*; *see also* [R. 16-8, p. 105] ("Movant was denied effective assistance of counsel . . . when counsel failed to move for a mistrial after the jury observed Mr. Dixon in physical restraints during his trial."); *id.* at 105–07 ("While not seen on video, Mr. Dixon the left the courtroom and entered the holdover area. The Commonwealth resumed questioning of the victim with the sound of Mr. Dixon's chains loudly rustling in the background, audible to the jury. . . . The restraints employed in this case would have been visible to the jury, and could still be heard after Dixon left the courtroom as evidenced by the video record."). Dixon also requested an evidentiary hearing. *Dixon II*, 2019 WL 2068538, at *1.

The Fayette Circuit Court declined to hold a hearing and denied Dixon's motion on all grounds. *Id.* With respect to Dixon's claim that he was prejudiced by the jury seeing him in restraints, the Fayette Circuit Court stated, "at various points throughout the trial, it can be clearly seen in the video recording that Dixon was not wearing any sort of restraints during the trial." [R. 1-1, p. 11]. Because video footage of the trial conclusively established that Dixon was not, in fact, shackled at any point, the court rejected his theory that he was somehow prejudiced by the jury seeing him in shackles. As for the apparent "sound" of shackles, the Fayette Circuit Court credited the Commonwealth's position that the "rustling sound" Dixon referred to was "likely the bailiffs keys rattling, as the holdover area remains locked and must be opened with a key anytime a person enters or exits that area" and "the same 'rustling' sound can be heard on the record moments before Ballentine enters the courtroom when the bailiff is walking across the courtroom." *Id.* at 11 n.20. Even so, the court determined "such a conclusion need not be reached" because, "[w]hatever the 'rustling' noise may have been, it is clear from the record that it was not Dixon's 'chains'" since he was never shackled. *Id.* at 11.

Dixon again appealed, and the Kentucky Court of Appeals affirmed the denial of Dixon's RCr 11.42 motion. *Id.* The Kentucky Court of Appeals "agree[d] with the trial court that Dixon has failed to put forth anything beyond mere speculation to support the fact that the jury ever saw Dixon in physical restraints." *Dixon II*, 2019 WL 2068538, at *3. The appellate court stated generally, however, that "we believe due process would cover situations where chains or restraints can be heard by the jury and clearly indicate restraint," *id.*, extending the United States Supreme Court's holding in *Deck v. Missouri* that "[v]isible shackling undermines the presumption of innocence and the related fairness of the fact-finding process." 544 U.S. 622, 630 (2005). Even so, the Kentucky Court of Appeals went on to explain:

> Even if we assume for the sake of argument that the rattling/jingling sound coming from the holdover room came from some type of restraint being used to subdue Dixon, we do not believe counsel was ineffective for failing to request an admonishment or mistrial. First, at defense counsel's request, the trial court did admonish the jury not to draw any inference from Dixon's decision to leave the courtroom. Second, given Dixon's extreme outburst, it was appropriate to restrain him in some manner in the holdover room. Any restraint was done out of the jury's sight so that the jurors were only tangentially aware of it. And, given the situation, the jury was more likely to infer that any restraint was used more out [of] a need to calm Dixon down than to confine him due to guilt. Under these circumstances, a mistrial would not have been warranted. A motion by counsel would likely have only unnecessarily drawn more attention to Dixon's confinement to the holdover room.

*Dixon II*, 2019 WL 2068538, at *4. In other words, the Kentucky Court of Appeals determined that although the clear sound of shackles may be prejudicial in some circumstances, in Dixon's case, trial counsel was not ineffective for failing to move for a mistrial based on the jury's ability to hear a remote jingling sound of unknown origin.

Dixon sought discretionary review from the Kentucky Supreme Court, but his request was denied. [R. 16-5, p. 1]. Having exhausted his state court remedies, Dixon timely filed this 28 U.S.C. § 2254 Petition alleging his trial counsel was constitutionally deficient for failing to: (1) request a mistrial or otherwise object to the jury seeing and/or hearing Dixon in shackles; (2) consult with and present testimony from an expert witness that Dixon acted under extreme emotional disturbance ("EED"); and (3) present lay witnesses who would have supported Dixon's claim of EED. [R. 1, pp. 5–8]. Dixon also asserts that the state trial court erred when it: (1) struck two jurors for cause over the objection of Dixon's counsel; and (2) admitted evidence of Dixon's prior bad acts in violation of Kentucky Rule of Evidence ("KRE") 404(b). *Id.* at 10.

In response, Warden Jordan argues Dixon failed to present "any precedent or case law" that would change the outcome of his case or demonstrate an unreasonable application of clearly established law. [R. 16, pp. 18–19]. Having agreed with the Warden that all Dixon's claims are

meritless, Magistrate Judge Smith recommended that this Court deny his Petition on all grounds and decline to issue a Certificate of Appealability. [R. 37, p. 26]. After seeking extensions of time to do so, Dixon filed an objection to Magistrate Judge Smith's recommended disposition. [R. 42].

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B), a district court judge may designate a magistrate judge to submit findings of fact and recommendations on applications for post-trial relief made by individuals convicted of criminal offenses. This Court must make a *de novo* determination only of dispositive matters to which specific objections are made. Fed. R. Civ. P. 72(b)(3); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection, which preserves the issue for appeal, "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (citation omitted). Courts need not conduct *de novo* review of general objections that fail to identify specific factual or legal issues, or of findings not objected to at all, because it duplicates the Magistrate Judge's efforts and wastes judicial economy. *Howard v. Sec. of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Courts construe *pro se* filings more leniently than those prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts do not have "an affirmative duty . . . to scrutinize *pro se* [pleadings] to determine whether there is a cause of action other than the one pleaded by the [*pro se* litigant] that is more advantageous to him." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). Further, a *pro se* litigant must still comply with court rules and procedural requirements. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Tobias v. State*, No. 18-1892, 2018 WL 8969133, at *1 (6th Cir. Dec. 17, 2018).

### III. ANALYSIS

#### A. Merits

As stated, Dixon has lodged only one objection to Magistrate Judge Smith's Recommendation, and it relates to his claim that trial counsel was ineffective for failing to object or seek a mistrial because the jury saw and/or heard Dixon in leg restraints. [R. 1, p. 5]. As for Dixon's remaining claims, as stated, this Court is not required to "review . . . a magistrate's factual or legal conclusions" to which no party objects "under a de novo or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 151 (1985). Nevertheless, this Court has examined the record and agrees with Magistrate Judge Smith's findings with respect to Dixon's other grounds for relief. The Court will therefore adopt those findings without further analysis.

With respect to the sole claim to which Dixon has objected, the Court preliminarily observes that Dixon has not "explain[ed] and cite[d] specific portions of the report which [he] deem[s] problematic." *Robert*, 507 F.3d at 994 (citation omitted). Dixon's three-paragraph objection is largely undeveloped, and "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Nevertheless, because of Dixon's *pro se* status, the Court will liberally construe the arguments he has put forth (which are not models of clarity) and consider their merits to the extent it can glean them. *See Erickson*, 551 U.S. at 94.

For context, Dixon was emotional during his trial, and the court warned him "early on that if he could not control his emotions, he would have to be removed from the courtroom." *Dixon II*, 2019 WL 2068538, at *3. Nevertheless, "[w]hen Ballentine entered the courtroom in her

wheelchair, Dixon can be heard on the record sobbing and crying out to her that he is sorry." *Id.* Dixon was voluntarily escorted from the courtroom by a bailiff. *Id.* Dixon has since maintained that, after leaving the courtroom, he was taken to a holdover area and when the Commonwealth resumed questioning, "the sound of Mr. Dixon's chains [were] loudly rustling in the background, audible to the jury." [R. 16-8, p. 105]. Dixon believes his trial counsel was ineffective for failing to object or seek a mistrial "concerning the jury hearing or seeing Mr. Dixon's restraints." *Id.*

Under the Antiterrorism and Effective Death Penalty Act of 1996, a district court must abide by the state court determinations of the merits unless the adjudication of the claim

> (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In other words, a federal habeas court may not issue the writ under § 2254(d)(1) "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "Similarly, a federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination." *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003). Petitioners face a high burden under § 2254(d), as it provides a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U. S. 19, 24 (2002)). Section 2254(e) further provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that a petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

When assessing an ineffective assistance of trial counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," as "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' deferential." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). To establish that counsel's actions or inaction "undermined the proper function of the adversarial process," a defendant must show that counsel's performance was both constitutionally deficient and prejudicial. *Strickland*, 466 U.S. at 686.

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms . . . considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id*. To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "An error by

counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

In her Recommendation, Magistrate Judge Smith acknowledged that Dixon's argument is two-fold: that he was prejudiced by the jury's ability to see and hear him in shackles. [R. 37, pp. 8–9]. She found, however, that both arguments fail either on procedural grounds or on the merits. *Id.* at 9. In his objection to Magistrate Judge Smith's recommended disposition, Dixon states as follows:

> The Magistrate Judge assert [sic] that one of the resons [sic] she denied Mr. Dixon's first argument []Shackles was because he had made an [sic] clerical error in first arguing in the lower courts how that the jury heard the shackles on him. However, rather the jury was able to hear or see Mr. Dixon in restraints. The Court of Appeals extended Deck v. Missouri, 544 U.S. 622 (2005) holding when it stated "we believe due process cover situations where chains, or restraints can be heard by the jury and clearly indicate restraint.["]
> . . .
>
> The Petitioner Mr. Dixon has demonstrated within his objection by law that a reasonable jurist would find this district court assessment of his constitutional claims debatable and are [sic] wrong. Mr. Dixon has made a substantial showing of the denial of his constitutional right and prays for this court to issue him a Certificate of Appealability.

[R. 24, pp. 1–2]. Dixon appears to suggest Magistrate Judge Smith faulted him for making a "clerical error" in arguing he was prejudiced only by the jury seeing him in shackles, and he actually intended to argue he was prejudiced by the jury seeing him shackled and/or hearing what sounded like shackles because the jury could infer he was, in fact, shackled. *Id.* at 1.[2]

---

[2] As a preliminary matter, Dixon's contention that Magistrate Judge Smith rejected his argument simply due to a "clerical error" is unfounded. Although Dixon's original petition only cursorily mentions the jury's ability to hear his shackles, as opposed to its ability to see him in shackles, *see* [R. 1, p. 4], Magistrate Judge Smith clearly acknowledged that Dixon raised the issue more formally in his reply brief:

> It is noted that Dixon makes a somewhat convoluted argument regarding the Kentucky Court of Appeals Opinion on this issue. The Kentucky Court of Appeals held that a defendant could be prejudiced "where chains or restraints can be heard [but not seen by] the jury." *Dixon II*, 2019 WL 2068538, at *3. The Kentucky Court of Appeals then held that Dixon was not prejudiced because his emotional outburst justified restraint. *Id.* at *4. Dixon argues that the holding in *Deck* addresses

Because, as stated, this Court must make a *de novo* determination of dispositive matters to which specific objections are made, Fed. R. Civ. P. 72(b)(3); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986), the Court turns to the state court's consideration of these issues.

Turning, first, to the Kentucky Court of Appeals' determination that Dixon could not have been prejudiced by the jury's apparent ability to see him in shackles, the Court finds it was neither erroneous nor unreasonable. As stated, "a determination of a factual issue made by a State court shall be presumed to be correct," and a petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In Dixon's case, the Fayette Circuit Court made the factual determination, through review of video footage of the trial, that Dixon was not shackled. [R. 1-1, p. 11]. The Kentucky Court of Appeals accepted this factual determination and found that Dixon "failed to put forth anything beyond mere speculation to support the fact that the jury ever saw Dixon in physical restraints." *Dixon II*, 2019 WL 2068538, at *3. The only evidence Dixon offers to contradict this determination is his own statement that he was, in fact, shackled. *See* [R. 33, p. 4] ("[T]he Commonwealth Attorney [positioned] that there were never any leg shackles on Dixon which was untrue. No bailiff ever placed Dixon in leg restraints when he was escorted from the courtroom to the holdover room because the leg shackles were already on him at the very start to the end of his trial!"). This is wholly insufficient to rebut the presumption of correctness afforded to the state court. Because the Kentucky Court of Appeals' factual determination that the jury did not see Dixon in shackles is presumed correct, the Court

---

only visible restraints, and the extension of that holding by the Kentucky Court of Appeals to also include the sound of restraints being used out of the sight of the jury was unreasonable. . . . He then argues that the Kentucky Court of Appeals erred by not applying that unreasonable extension to him.

*See* [R. 37, pp. 8–9]. However, presumably because a "reply brief is not a device for raising new issues which are essential to the success of the appeal," *Smith v. Com.*, 366 S.W.3d 399, 402 (Ky. 2012) (citation omitted), Magistrate Judge Smith declined to further consider the merits of this specific argument.

will overrule Dixon's objection and deny his 2254 Petition with respect to his claim of prejudice from the jury seeing him shackled.

Next considering the Kentucky Court of Appeals' determination that Dixon was not prejudiced by the jury hearing what may have sounded like shackles, the Court likewise finds it was not unreasonable. As stated, in *Deck v. Missouri*, the United States Supreme Court determined "[v]isible shackling undermines the presumption of innocence and the related fairness of the fact-finding process." 544 U.S. at 630. That opinion makes no mention of audible, as opposed to visible, shackling. Still, the Kentucky Court of Appeals found that due process protects a defendant in either scenario and extended *Deck*'s holding to cover both. *See Dixon II*, 2019 WL 2068538, at *3. Dixon argues the Kentucky Court of Appeals did so unreasonably when it determined that the facts of Dixon's case did not bring him within the protections of its extension of *Deck*. *See* [R. 42, pp. 1–2]; *see also* [R. 33, pp. 1–3]. In other words, Dixon appears to suggest[3] the Kentucky Court of Appeals correctly extended the principles of *Deck* to cover situations in which restraints can be heard but not seen, but "unreasonably refused to extend the principle . . . to Dixon within this particular case." [R. 33, p. 2].

The Court finds Dixon's position untenable for several reasons. First, "'Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's

---

[3] To be clear, though his argument is confusing at times, Dixon does not challenge the Kentucky Supreme Court's extension of *Deck*'s principles generally; to do so would contradict his argument that the principle should apply in his case. But Dixon cites to Sixth Circuit case law holding that "*Deck* is expressly limited to cases where the defendant's shackles under the Fifth and Fourteenth Amendments are visible to the jury during trial," *Adams v. Bradshaw*, 826 F.3d 306, 317 (6th Cir. 2016), and notes, himself, that "in Deck the United States Supreme Court did not hold that the rule is applied when the jury 'hears' the rattling/jingling of the chains or shackles[.]" [R. 33, p. 3]. At other points, however, Dixon clearly seeks to rely on the court's extension of *Deck* to support his position. *See id.* at 2 ("The Court of Appeals even extended Deck's holdings to cover due process situations where chains or restraints can be heard by the jury and clearly indicate restraint. . . . Here, the Kentucky Court of Appeals unreasonably refused to extend the principle of Deck as to the jury 'hearing the shackles which clearly indicated restraint' to Dixon within this particular case."). Because the Court construes *pro se* filings more leniently than those prepared by lawyers, *Erickson*, 551 U.S. at 94, the Court presumes Dixon is not attempting to undermine his own position by arguing that the Kentucky Court of Appeals should *not* have extended *Deck* to cover situations where shackles are audible but not visible.

precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.'" *Adams v. Bradshaw*, 826 F.3d 306, 317 (6th Cir. 2016) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014)). Thus, the Kentucky Court of Appeals, in applying *Deck*, was not required to extend its holding to account for a jury's ability to hear, but not see, shackles. In other words, the Kentucky Court of Appeals would have reasonably applied federal law by simply holding that *Deck* is implicated only where restraints are visible and denying Dixon's claim without further analysis. And, if it had, this Court could not have faulted it for doing so. *See Adams*, 826 F.3d at 317.

Notwithstanding, the Kentucky Court of Appeals' extension of *Deck* and its application of that extension to the facts of Dixon's case were reasonable. As Dixon correctly notes in his reply brief, "[a] state court's ruling is an 'unreasonable application' of clearly established federal law . . . 'if the state court identifies the correct governing legal rule' or principle from Supreme Court precedent but 'applies it to the facts of the particular state prisoner's case' in an unreasonable manner," which can include "'unreasonably extending' or 'unreasonably refusing to extend' the principle." *Thompson v. Parker*, 867 F.3d 641, 646 (6th Cir. 2017) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)). Here, however, the Kentucky Court of Appeals did not unreasonably refuse to apply or extend United States Supreme Court precedent to Dixon's case. Rather, it declined to apply *its own extension* of *Deck* to the facts of Dixon's case. As stated, *Deck* makes no mention of audible restraints; it dictates only that "[v]isible shackling undermines the presumption of innocence and the related fairness of the fact-finding process." 544 U.S. at 630. The Kentucky Court of Appeals' determination concerning the jury's ability to hear Dixon's restraints was not, therefore, an unreasonable application of (or refusal to extend) *federal* law.

Nor was the Kentucky Court of Appeals' decision based on an unreasonable determination of the facts in light of the evidence presented. Again, the court opined that "due process would cover situations where chains or restraints can be heard by the jury *and* clearly indicate restraint." *Dixon II*, 2019 WL 2068538, at *3 (emphasis added). As both the Fayette Circuit Court and the Kentucky Court of Appeals acknowledged, the source of the "jingling" sound that Dixon claims is "chains" is unknown. It could, in theory, have been some sort of restraint used on Dixon after he was removed from the courtroom, but both courts determined it could just as likely have been the bailiff's keys. Moreover, as the Kentucky Court of Appeals noted, the jurors "were only tangentially aware" of the jingling sound. *Id.* at *4. On these facts, it is reasonable to conclude that the sound did not "clearly indicate restraint." *Id.* at *3. Because video footage of the trial showed Dixon was not shackled, because the origin of the jingling sound heard on the record was unknown and did not clearly indicate restraint to the jury, and because the jury was only "tangentially aware" of the sound, the Kentucky Court of Appeals reasonably determined that "[a] motion by counsel would likely have only unnecessarily drawn more attention to Dixon's confinement to the holdover room." *Id.* at *4. For these reasons, the Kentucky Court of Appeals reasonably determined the facts in light of the evidence presented and properly declined to apply its extension of *Deck* in Dixon's case.

Since this Court finds the Kentucky Court of Appeals reasonably concluded that Dixon was not prejudiced by the jury seeing or hearing him in restraints, it likewise finds that Dixon has failed to demonstrate his trial counsel was ineffective for failing to object or seek a mistrial based on that alleged prejudice.

### B. Certificate of Appealability

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings for the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court should grant a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Although Dixon argues "reasonable jurist would find this district court assessment of his constitutional claims debatable and are wrong," and positions that he "made a substantial showing of the denial of his constitutional right," he stops there, offering no support for his request for a Certificate of Appealability. [R. 24, p. 2]. This Court therefore agrees with Magistrate Judge Smith that a certificate of appealability is inappropriate in this matter because Dixon has not made the required showing. *See id.* As such, no Certificate of Appealability shall issue.

### C. CONCLUSION

The Court has thoroughly reviewed Magistrate Judge Smith's recommended disposition, Dixon's objection, and the entire record. For the reasons above, Dixon is not entitled to relief under § 2254. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Magistrate Judge Smith's Report and Recommendation [**R. 37**] is **ADOPTED** as the opinion of this Court to the extent outlined above.

2. Petitioner Wendell Dixon's Objection to Magistrate Judge Smith's Report and Recommendation [**R. 42**] is **OVERRULED**.

3. Dixon's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [**R. 1**] is **DENIED**.

4. No certificate of appealability shall issue.

5. A separate judgment will be entered consistent with this Order.

This the 27th day of September, 2023.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY